May it please the Court, Devin Burstein, Federal Defenders, on behalf of Mr. Alcala-Sanchez. Your Honors, in Santibelo, Chief Justice Berger wrote, This record represents another example of an unfortunate lapse in the orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often understaffed prosecutor's offices. The heavy workload may well explain these episodes, but it does not excuse them. And that's the situation here. The prosecutor's heavy workload may explain the mistake, may explain filing a sentencing summary chart that breached the plea agreement and recommended a guidelines calculation and a sentence way above what Mr. Alcala bargained for, but it doesn't excuse it. And the fact that the breach was inadvertent is of no moment the, I'm sorry, Jen. No, I just want to ask, but she did admit that she made a mistake, and she admitted that before sentencing. Why didn't that remedy the breach? Well, I think that she, at sentencing, a couple of different things happened. She did admit that she made an inadvertent, essentially an inadvertent breach. She filed a sentencing summary chart that was not in line with the plea agreement, and that was inadvertent. And the cases uniformly hold that from Senate DiBello that the inadvertence doesn't matter, because what the defendant is bargaining for is a unified and consistent front. But let me just ask you this, just to follow up on Judge Nelson's question. Are you arguing that there's no way that that sort of breach could be cured? So as I read your brief, it seemed to suggest that once you've said something, even if it was just a slip of the tongue, you're through. It's reverse remand and go to a different sentencing judge. Is that your position? No, I don't think you'd need to go that far, because I think there's different types of things. There are typographical errors that we all make, and that's one thing. But here, it's not that situation. Note, first of all, that not only did the sentencing summary chart contain the wrong guidelines calculation, it also contained a sentencing recommendation that was at the high end, which was above probation. So it wasn't a mere typographical error. But what's more than that, and this is important, is that there was no – it's one thing if the prosecutor files a sentencing summary chart and goes, oops, wrong thing, and withdraws it on the record and files a new one. But that is not what happened here. First of all, if you look at the docket, you'll see that's the sentencing summary chart that's there. But second of all, what actually happens is the prosecutor candidly tells the judge at sentencing, I want you to follow the plea agreement, but I don't know whether it's a plus 16 or a plus 8. I mean, that's not the kind of situation where you could say that it was just an inadvertent slip of the tongue, is I think the phrase Your Honor used. I'm trying to see what the bookends are here. Right. How much of a correction? I mean, this prosecutor fell on her sword. Oh, I'm so sorry. We made a mistake in the office. Here's what we're saying now. And you're saying that's not enough. So what would be enough? I think in this specific case, I think that if it had been filed and then immediately withdrawn and then a united front had been put forward, that might be enough. But that's not what happened here. And I would just point out that Kirkler from the First Circuit, obviously not binding, dealt with this. And they are clear. The court in Santabella nowhere suggested that a mere withdrawal of the offending recommendation with substitution of the agreed recommendation would have been a sufficient remedy. While no such attempt was made in Santabella, its futility is suggested by the court's comment. At this stage in the prosecution, there's not a good position to argue that an inadvertent breach of the agreement is immaterial. That the breach was inadvertent does not lessen the impact. And, Judge Okuda, you made this point just a few months ago in your Ellis decision. And there you noted it once again, that where the government promises to abstain from making a sentencing recommendation, it may not argue that its inadvertent breach in making the recommendation is immaterial. Because the fact of the breach of the agreement was inadvertent does not lessen its impact. I'm sure I was quoting someone. Oh, and I'm happily quoting you, Judge. And that is, that's the point here. This mistake's happened. That's a pretty good argument to me from where I'm sitting. What I wanted was this, counsel. Here the mistake is acknowledged. The mistake was acknowledged. Then the judge makes his ruling. Is there really any way that we can ever tell if the judge's ruling is influenced by the mistake having been made? The judge may look at it and see, well, the government really thinks there should be a higher sentence here. But it's willing to live with its plea agreement. But in its heart of hearts, if the government has a heart, really wants a higher sentence that makes this appropriate in terms of human nature, do we ever know if that is going to affect what the judge does? No, Your Honor, and I think that you raise a great point, and it's the point that was echoed by this Court's decision in Mondragon where it says, and I'm quoting, it is of no consequence that the district judge did not construe the prosecutor's statements as a comment on the sentence or a recommendation, or that the statements may have had no effect upon the sentence. The harmless error rule does not apply when the government breaches a plea agreement. The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement. That is this Court's decision, quoting from Mondragon. It's a point that was echoed in this Court's decision in Camper. Franco Lopez notes the almost impossibility and the words they use of unringing the bell. And then in Camarillo-Teo, this Court explains that the benefit, this is again a quote, the benefit to the defendant is that it presents a unified front to the Court. Now, Mr. Alcala never got that benefit, and the remedy is clear. The sentence must be reversed, sent back to a different district court judge for strict compliance with the plea agreement and resentencing. And I would like to reserve my rebuttal time. Thank you, Your Honors. Thank you. Good morning, Your Honors. Ann Perry on behalf of the United States, reliving what was a very bad day. I don't, the record is replete with my apologies to the Court at the district court level. It was an error on the plea, on the- Counsel, your apologies are sort of besides the point. I understand that. An honest mistake could happen to anyone. But really, what is the, now I'm not viewing this in terms of, you know, you made a mistake, and so we should affirm because it was in good faith. But really, what is the harm, the harm to the government if we just let this be resentenced with another judge, where the government can initially come in and give the appellant the benefit of his plea bargain, and then let the judge sentence that the judge sees fit? You know, what's the harm to the government's interest? Because I'm not really quite understanding why there's this, you know, major argument against the appeal. The only harm that we can see has already been addressed, I believe, in the opening argument with Judges Nelson and Nakuda, and that is based on the position that has been taken by Mr. Alcala in this case, where does it end? In other words, can the United States never make a mistake? Can it never be withdrawn? Where does it start and where does it stop? Because the sentencing summary chart is an operative of the Southern District of California. I'm not sure who else uses it. It's a summary of guidelines calculations. Because of that, it doesn't, and I would not dispute that at the end of it, it has a recommendation. But operatively, it isn't the same as a sentencing memorandum. It certainly isn't the same as an oral argument recommending a certain sentence. And that didn't happen in this case. Because when I appeared in court to deal with it, I stood by the plea agreement, recommended the sentence that had been recommended in the plea agreement. And I think that's the reason, sir, that we are looking at this case in the way that we are. Okay, thank you. Unless there are any further questions, I think the record kind of speaks for itself. Thank you. All right, the case of United States v. Alcala-Sanchez is submitted. And we'll next hear the case of United States v. Vasquez-Olea.
judges: Nelson, Gould, Ikuta